MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
ANGEL DIAZ, BERNABE RUEDA GARCIA,
and MIGUEL GARCIA, *individually and on*
*behalf of others similarly situated,*

|  |  |
|---|---|
| *Plaintiffs*, | **COMPLAINT** |
| -against- | **COLLECTIVE ACTION UNDER**<br>**29 U.S.C. § 216(b)** |
| FIRST DRUNKEN CHICKEN CORP. (D/B/A<br>LIM'S KITCHEN (BAR &POCHA)), WOOBI<br>INC. (D/B/A LIM'S KITCHEN (BAR &<br>POCHA)), BOKYOUNG LIM, and<br>DONGMIN PARK. | **ECF Case** |
| *Defendants.* | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiffs Angel Diaz, Bernabe Rueda Garcia, and Miguel Garcia, individually and on

behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys,

Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against FIRST

DRUNKEN CHICKEN CORP. (d/b/a Lim's kitchen (bar &pocha)), WOOBI INC. (d/b/a Lim's

kitchen (bar &pocha)), ("Defendant Corporations"), BOKYOUNG LIM, and DONGMIN PARK

("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.    Plaintiffs are former employees of Defendants FIRST DRUNKEN CHICKEN

CORP. (d/b/a Lim's kitchen (bar &pocha)), WOOBI INC. (d/b/a Lim's kitchen (bar &pocha)),

BOKYOUNG LIM, and DONGMIN PARK.

2.     Defendants own, operate, or control a Korean Restaurant, located at 38-40 Crescent Street, Astoria, New York 11101 operating under the name "Lim's kitchen (bar &pocha)".

3.     Upon information and belief, individual Defendants BOKYOUNG LIM, and DONGMIN PARK serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurants as a joint or unified enterprise.

4.     Plaintiffs were ostensibly employed as delivery workers at the restaurant located at 38-40 Crescent Street, Astoria, New York 11101.

5.     Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to placing brown paper bags into plastic bags, wrapping utensils and napkins, stocking the refrigerator, packing the delivery orders, unloading and carrying deliveries to the basement and organizing deliveries and merchandise in the basement, (hereafter the "non-tipped duties").

6.     At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.     Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.     Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.     Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.    Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.    Regardless, at all relevant times, Defendants paid Plaintiffs at a rate that was lower than the required tip-credit rate.

12.    However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day. 12 N.Y. C.R.R. §146.

13.    Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do).

14.    In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

15.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 et seq. and 650 et seq. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Korean Restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

21.    Plaintiff Angel Diaz ("Plaintiff Diaz" or "Mr. Diaz") is an adult individual residing in Queens County, New York.

- 4 -

22.    Plaintiff Diaz was employed by Defendants at Lim's kitchen (bar &pocha) from approximately May 2020 until on or about May 2021.

23.    Plaintiff Bernabe Rueda Garcia ("Plaintiff Rueda" or "Mr. Rueda") is an adult individual residing in Queens County, New York.

24.     Plaintiff Rueda was employed by Defendants at Lim's kitchen (bar &pocha) from approximately May 2021 until on or about July 2021 .

25.    Plaintiff Miguel Garcia ("Plaintiff Garcia" or "Mr. Garcia") is an adult individual residing in Queens County, New York.

26. Plaintiff Garcia was employed by Defendants at Lim's kitchen (bar &pocha) from approximately December 2020 until on or about July 2021.

*Defendants*

27. At all relevant times, Defendants owned, operated, or controlled a Korean Restaurant, located at 38-40 Crescent Street, Astoria, New York 11101 under the name "Lim's kitchen (bar &pocha)".

28. Upon information and belief, FIRST DRUNKEN CHICKEN CORP. (d/b/a Lim's kitchen (bar &pocha)) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 38-40 Crescent Street, Astoria, New York 11101.

29. Upon information and belief, WOOBI INC. (d/b/a Lim's kitchen (bar &pocha)) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 38-40 Crescent Street, Astoria, New York 11101.

30. Defendant BOKYOUNG LIM is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant BOKYOUNG LIM is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant BOKYOUNG LIM possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

31. Defendant DONGMIN PARK is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant DONGMIN PARK is sued individually in his capacity as a manager of Defendant Corporations. Defendant DONGMIN PARK possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

32. Defendants operate a Korean Restaurant located in the Astoria section of Queens in New York.

33. Individual Defendants, BOKYOUNG LIM, and DONGMIN PARK, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

34. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

35. Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

36. Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

37. In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

38. Upon information and belief, Individual Defendant BOKYOUNG LIM operates Defendant Corporations as either alter egos of himself and/or fails to operate Defendant Corporations as entities legally separate and apart from himself, by among other things:

a)      failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)      defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)      transferring assets and debts freely as between all Defendants,

d)      operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e)      operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f)      intermingling assets and debts of their own with Defendant Corporations,

g)      diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h)      Other actions evincing a failure to adhere to the corporate form.

39. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

40. In each year from 2020 to 2021, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

41. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

42. Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

43.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Angel Diaz*

44. Plaintiff Diaz was employed by Defendants from approximately May 2020 until on or about May 2021.

45. Defendants ostensibly employed Plaintiff Diaz as a delivery worker.

46. However, Plaintiff Diaz was also required to spend a significant portion of his work day performing the non-tipped duties described above.

47. Although Plaintiff Diaz ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

48. Plaintiff Diaz regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

49. Plaintiff Diaz's work duties required neither discretion nor independent judgment.

50. Throughout his employment with Defendants, Plaintiff Diaz regularly worked in excess of 40 hours per week.

51. From approximately May 2020 until on or about May 2021, Plaintiff Diaz worked three weeks per month from approximately 5:00 p.m. until on or about 11:00 p.m., one day a week, from approximately 11:00 a.m. until on or about 11:00 p.m. three days a week and from approximately 11:00 a.m. until on or about 11:30 p.m., three days a week (typically 79.5 hours per week).

52. From approximately May 2020 until on or about May 2021, Plaintiff Diaz worked one week a month from approximately 11:00 a.m. until on or about 11:00 p.m. three days a week

and from approximately 11:00 a.m. until on or about 11:30 p.m., three days a week (typically 73.5 hours per week). (typically 28 hours per week).

53. Throughout his employment, Defendants paid Plaintiff Diaz his wages in cash .

54. From approximately May 2020 until on or about August 2020, Defendants paid Plaintiff Diaz a fixed salary of $80 per day for double shifts and $20 per day for single shifts.

55. From approximately August 2020 until on or about May 2021, Defendants paid Plaintiff Diaz a fixed salary of $60 per day  for double shifts and $20 per day for single shifts.

56. Plaintiff Diaz's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

57. For example, Defendants required Plaintiff Diaz to work an additional 30 minutes past his scheduled departure time three days a week, and did not pay him for the additional time he worked.

58. Although from approximately May 2020 until on or about August 2020, Defendants allegedly granted Plaintiff Diaz one hour for meal periods, they interrupted these breaks every day by requiring  him to stop eating and go make deliveries.

59. Plaintiff Diaz was never notified by Defendants that his tips were being included as an offset for wages.

60. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Diaz's wages.

61. Defendants withheld a portion of Plaintiff Diaz's tips; specifically, Defendants withheld 10% of credit card tips and tips paid through Seamless.

62. Plaintiff Diaz was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

63. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Diaz regarding overtime and wages under the FLSA and NYLL.

64. Defendants did not give any notice to Plaintiff Diaz, in English and in Spanish (Plaintiff Diaz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

65. Defendants required Plaintiff Diaz to purchase "tools of the trade" with his own funds—including bike repair and maintenance.

### *Plaintiff Bernabe Rueda Garcia*

66. Plaintiff Rueda was employed by Defendants from approximately May 2021 until on or about July 2021.

67. Defendants ostensibly employed Plaintiff Rueda as a delivery worker.

68. However, Plaintiff Rueda was also required to spend a significant portion of his work day performing the non-tipped duties described above.

69. Although Plaintiff Rueda ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

70. Plaintiff Rueda regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

71. Plaintiff Rueda's work duties required neither discretion nor independent judgment.

72. Throughout his employment with Defendants, Plaintiff Rueda regularly worked in excess of 40 hours per week.

73. From approximately May 2021 until on or about July 2021, Plaintiff Rueda worked three weeks each month from approximately 11:00 a.m. until on or about 11:00 p.m., or from approximately 9:00 a.m. until on or about 9:00 p.m. three days a week and from approximately 11:00 a.m. until on or about 11:20 p.m., or from approximately 9:00 a.m. until on or about 9:20 p.m. three days a week (typically 73 hours per week).

74. From approximately May 2021 until on or about July 2021, Plaintiff Rueda worked one week each month from approximately 11:00 a.m. until on or about 11:00 p.m., or from approximately 9:00 a.m. until on or about 9:00 p.m. four days a week and from approximately 11:00 a.m. until on or about 11:20 p.m., or from approximately 9:00 a.m. until on or about 9:20 p.m. three days a week (typically 85 hours per week).

75. Throughout his employment, Defendants paid Plaintiff Rueda his wages in cash.

76. From approximately May 2021 until on or about July 2021, Defendants paid Plaintiff Rueda a fixed salary of $80 per shift.

77. Defendants did not pay Plaintiff Rueda any wages for his last week of work.

78. Plaintiff Rueda's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

79. For example, Defendants required Plaintiff Rueda to work an additional 20 minutes past his scheduled departure time three days a week, and did not pay him for the additional time he worked

80. Although Defendants allegedly granted Plaintiff Rueda two hours for meal periods, he never was able to take these breaks because Defendants required him to perform deliveries during these breaks.

81. Plaintiff Rueda was never notified by Defendants that his tips were being included as an offset for wages.

82. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rueda's wages.

83. Defendants withheld a portion of Plaintiff Rueda's tips; specifically, Defendants withheld 10% of credit card tips and tips paid through Seamless.

84. In order to release his weekly pay, Defendants required Plaintiff Rueda to sign a document, the contents of which he could not review at all because it was written in English.

85. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rueda regarding overtime and wages under the FLSA and NYLL.

86. Defendants did not provide Plaintiff Rueda an accurate statement of wages, as required by NYLL 195(3).

87. Defendants did not give any notice to Plaintiff Rueda, in English and in Spanish (Plaintiff Rueda's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

88. Defendants required Plaintiff Rueda to purchase "tools of the trade" with his own funds—including a motorcycle, a delivery book bag and a raincoat.

*Plaintiff Miguel Garcia*

89. Plaintiff Garcia was employed by Defendants from approximately December 2020 until on or about July 15, 2021.

90. Defendants ostensibly employed Plaintiff Garcia as a delivery worker.

91. However, Plaintiff Garcia was also required to spend a significant portion of his work day performing the non-tipped duties described above.

92. Although Plaintiff Garcia ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

93. Plaintiff Garcia regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

94. Plaintiff Garcia's work duties required neither discretion nor independent judgment.

95. Throughout his employment with Defendants, Plaintiff Garcia regularly worked in excess of 40 hours per week.

96. From approximately December 2020 until on or about July 15, 2021, Plaintiff Garcia worked from approximately 9:00 a.m. until on or about 9:00 p.m., or from approximately 10:30 a.m. until on or about 10:30 p.m. six days a week and from approximately 5:00 p.m. until on or about 11:00 p.m., one day certain weeks (typically 72 to 78 hours per week).

97. Throughout his employment, Defendants paid Plaintiff Garcia his wages in cash.

98. From approximately December 2020 until on or about April 2021, Defendants paid Plaintiff Garcia a fixed salary of $60 per shift.

99. From approximately May 2021 until on or about July 15, 2021, Defendants paid Plaintiff Garcia a fixed salary of $80 per shift.

100.    Although from approximately December 2020 until on or about May 2021, Defendants allegedly granted Plaintiff Garcia 30 minute meal periods, they interrupted these breaks every day by requiring him to stop eating and go make deliveries.

101.    Similarly, although Defendants allegedly granted Plaintiff Garcia a two hour meal period, he never was able to take this break because Defendants required him to perform deliveriesduring the break.

102.    Plaintiff Garcia was never notified by Defendants that his tips were being included as an offset for wages.

103.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Garcia's wages.

104.    Defendants withheld a portion of Plaintiff Garcia's tips; specifically, Defendants withheld 10% of credit card tips and tips paid through Seamless.

105.    In order to release his weekly pay, Defendants required Plaintiff Garcia to sign a document, the contents of which he could not review at all because it was written in English.

106.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL.

107.    Defendants did not give any notice to Plaintiff Garcia, in English and in Spanish (Plaintiff Garcia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

108.    Defendants required Plaintiff Garcia to purchase "tools of the trade" with his own funds—including a Vespa motorcycle, a helmet and a backpack for deliveries.

*Defendants' General Employment Practices*

109.    At all times relevant to this Complaint, Defendants maintained a policy and practiceof requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a weekwithout paying them appropriate minimum wage, spread of hours pay, and overtime compensationas required by federal and state laws.

110.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, inter alia, not paying them the wages they were owed for the hours they worked.

- 15 -

111.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimumwage rate.

112.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

113.     Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

114.     Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spentperforming the non-tipped duties outlined above.

115.  Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

116.     Plaintiffs and all other tipped workers were paid at a rate that was lower than the lower tip-credit rate by Defendants.

117.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

118.     New York State regulations provide that an employee cannot be classified as a tippedemployee on any day in which he or she has been assigned to work in an occupation in which tipsare not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

119.    In violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

120.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

121.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

122.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

123.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

124.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

125.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

126.    Defendants paid Plaintiffs their wages in cash.

127.    Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

128.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

129.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

130.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

131.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

132.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

133.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the

employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour,shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing addressif different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

134.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or wereemployed by Defendants or any of them, on or after the date that is three years before the filing ofthe complaint in this case (the "FLSA Class Period").

135.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarlysituated in that they had substantially similar job requirements and pay provisions, and have beensubject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay ata one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records as required under the FLSA.

136.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

137.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

- 19 -

138.    At all times relevant to this action, Defendants were Plaintiffs' employers within themeaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

139.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

140.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

141.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

142.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicableminimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

143.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

144.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

145.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rateof pay for each hour worked in excess of forty hours in a work week.

146.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtimecompensation was willful within the meaning of 29 U.S.C. § 255(a).

147.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

148.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

149.    At all times relevant to this action, Defendants were Plaintiffs' employers within themeaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs,controlled the terms and conditions of their employment, and determined the rates and methods ofany compensation in exchange for their employment.

150.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the NewYork State Department of Labor, paid Plaintiffs less than the minimum wage.

151.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

152.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

153.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

154.    Defendants, in violation of N.Y. Lab. Law § 190 et seq., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs' overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

155.    Defendants' failure to pay Plaintiffs' overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

156.    Plaintiffs were damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

157.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

158.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 et seq. and 12 N.Y.C.R.R. §§ 146-1.6.

159.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs'spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

160.    Plaintiffs were damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

161.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

162.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish(Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paidby the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by theemployer; the physical address of the employer's main office or principal place of business,

and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

163.      Defendants are liable to each Plaintiff in the amount of $5,000, together with costsand attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONSOF THE NEW YORK LABOR LAW

164.      Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

165.      With each payment of wages, Defendants failed to provide Plaintiffs with an accuratestatement listing each of the following: the dates of work covered by that payment of wages; nameof employee; name of employer; address and phone number of employer; rate or rates of pay andbasis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; grosswages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

166.      Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

167.      Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

168.      Defendants required Plaintiffs to pay, without reimbursement, the costs and expensesfor purchasing and maintaining equipment and "tools of the trade" required to perform

their jobs, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

169.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATIONOF THE NEW YORK LABOR LAW

170.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

171.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

172.    New York State Labor Law § 196-d prohibits any employer or his agents, includingowners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported tobe a gratuity, for an employee.

173.    Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were receivedfrom customers.

174.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

175.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount tobe determined at trial.

## TENTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONSOF THE NEW YORK LABOR LAW

176.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

177.    Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

178.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount

equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)    Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)    Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)    Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)    Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)    Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay

shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
       September 30, 2021

                                  MICHAEL FAILLACE & ASSOCIATES, P.C.

                        By:      /s/ Michael Faillace
                                 Michael Faillace [MF-8436]
                                 60 East 42nd Street, Suite 4510
                                 New York, New York 10165
                                 Telephone: (212) 317-1200
                                 Facsimile: (212) 317-1620
                                 *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 19, 2021

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                            Miguel Garcia

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature *I* Finna:

Date / Fecha:                            19 de Julio 2021

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                  Telephone  (212) 317-1200
New York, New York 10165                                     Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com


                                                          August 2, 2021

BY HAND


TO:     Clerk of Court,


I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**


Name/ Nombre:                    Bernabe Rueda Garcia

Legal Representative/ Abogado:   Michael Faillace & Associates, P.C.

Signature/ Finna:

Date/ Fecha:                     2 de Agosto de 2021


*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42<sup>nd</sup>Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

————

Faillace@employmentcompliance.com

July 19, 2021

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                           Miguel Garcia

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature *I* Finna:

Date / Fecha:                           19 de Julio 2021

*Certified as a minority-owned business in the State of New York*