**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ANGEL DIAZ, BERNABE RUEDA GARCIA,
and MIGUEL GARCIA, *individually and on*
*behalf of others similarly situated,*

                        *Plaintiffs,*

-against-

FIRST DRUNKEN CHICKEN CORP. (D/B/A
LIM'S KITCHEN (BAR &POCHA)), WOOBI
INC. (D/B/A LIM'S KITCHEN (BAR &
POCHA)), BOKYOUNG LIM, and
DONGMIN PARK.

                        *Defendants.*
-------------------------------------------------------X

**1:21-cv-05428-WFK-RML**


**DECLARATION OF CATALINA SOJO, ESQ.**
**IN SUPPORT OF ORDER FOR JUDGMENT BY DEFAULT**


CSM LEGAL, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiffs*

CATALINA SOJO, an attorney duly admitted to practice in New York and in this Court, affirms under penalty of perjury pursuant to 28 U.S.C. Section 1746 as follows:

## I.     PRELIMINARY STATEMENT

1.     I am the managing partner of CSM LEGAL., which represents Plaintiffs ANGEL DIAZ, BERNABE RUEDA GARCIA, and MIGUEL GARCIA ("Plaintiffs"), in this lawsuit for violation of minimum and overtime wage laws, wage notice and statement violations, liquidated damages, prejudgment interest, and attorneys' fees and costs under the federal Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") and implementing regulations.

2.     I submit this declaration in support of Plaintiffs' application for a default judgment pursuant to Fed. R. Civ. P. 55(b) (2) and Local Rule 55.2(b).

3.     Plaintiffs properly served Defendants with the Complaint and Defendants have failed to appear, plead, file an answer, or otherwise defend this action. Accordingly, Plaintiffs are entitled to default judgment.

## II.     RELEVANT PROCEDURAL HISTORY

4.     Plaintiffs commenced their action on September 30, 2021 by filing the Complaint. Dkt. No. 1. Exhibit A (Complaint).

5.     Copies of the Summons and Complaint were served on FIRST DRUNKEN CHICKEN CORP. (D/B/A LIM'S KITCHEN (BAR & POCHA) on October 4, 2021 pursuant to Fed. R. Civ. P. 4(h) (1)(B), N.Y. C.P.L.R § 311-a(a), and Section 303 of the New York Limited Liability Company Law, by personally serving Nancy Dougherty, an authorized agent in the Office of the Secretary of State of New York. Copies of the Summons and Complaint were served on WOOBI INC. (D/B/A LIM'S KITCHEN (BAR & POCHA)on October 4, 2021 pursuant to Fed. R. Civ. P. 4(h) (1)(B), N.Y. C.P.L.R § 311-a(a), and Section 303 of the New York Limited Liability Company Law, by personally serving Nancy Dougherty, an authorized

agent in the Office of the Secretary of State of New York. Copies of the Complaint were served on BOKYOUNG LIM and DONGMIN PARK on October 7, 2021, pursuant to Fed. R. Civ. P. 4(e) (1) and New York C.P.L.R. § 308(2), by delivering the Summons and Complaint to Blair "Doe", a person of suitable age and discretion, identified as "manager", at the Defendant's place of business within the state, and mailing copies of each to Defendants on BOKYOUNG LIM and DONGMIN PARK, in accordance with the requirements of New York CPLR § 308(2). Proof of such service as to Defendants thereof was filed on December 14, 2021. Dkt. Nos. 8-11. Exhibit B (all affidavits of service of the Complaint)

6.    The Defendants failed to answer the Complaint, or otherwise appear.  On January 27, 2022, the Clerk of the Court issued certificates of default as to FIRST DRUNKEN CHICKEN CORP. (D/B/A LIM'S KITCHEN (BAR &POCHA)), WOOBI INC. (D/B/A LIM'S KITCHEN (BAR & POCHA)), BOKYOUNG LIM, and DONGMIN PARK. Dkt. No. 14. Exhibit C (certificates of default).

7.    Plaintiff ANGEL DIAZ declaration is annexed hereto as Exhibit D.

8.    Plaintiff BERNABE RUEDA GARCIA declaration is annexed hereto as Exhibit E.

9.    Plaintiff MIGUEL GARCIA declaration is annexed hereto as Exhibit F.

### III.    STATEMENT OF RELEVANT FACTS

10.    Plaintiffs are former employees of Defendants. Exhibit A ¶¶ 22, 24, 26, Exhibit D, E, and F ¶¶ 1, 3, 8. Defendants owned, operated, or controlled a Korean Restaurant, located at 38-40 Crescent Street, Astoria, New York 11101 under the name "Lim's kitchen (bar &pocha)." Exhibit. A ¶¶ 32-33.  Defendants BOKYOUNG LIM and DONGMIN PARK had the power to hire and fire the Plaintiffs, control Plaintiffs' terms and conditions of employment, and determine the rate and method of Plaintiffs' compensation.  Exhibit A ¶ 33-35, Exhibits D, E, and F. ¶6

11.     At all times relevant to this action, Defendants were engaged in interstate commerce or in an industry or activities that affect interstate commerce. Exhibit A ¶ 41.  The gross annual volume of sales made by Defendants, in each year from 2020 to 2021, was not less than $500,000.  Exhibit A ¶ 34; Exhibits D, E, F ¶ 11.

### A.     Plaintiff Angel Diaz

12.     Plaintiff Diaz was ostensibly employed by Defendants as a delivery worker from approximately May 2020 until on or about May 2021. Exhibit A ¶¶ 44-45; Exhibit D ¶¶ 8. However, Plaintiff Diaz spent over 20% of each day performing non-tipped duties. Exhibit A ¶¶ 46-47; Exhibit D ¶¶ 9.

13.     Plaintiff Diaz work did not require discretion or independent judgment.  Exhibit A ¶ 49 Exhibit D ¶ 12.

14.     From approximately May 2020 until on or about May 2021, Plaintiff Diaz worked three weeks per month from approximately 5:00 p.m. until on or about 11:00 p.m., one day a week, from approximately 11:00 a.m. until on or about 11:00 p.m. three days a week and from approximately 11:00 a.m. until on or about 11:30 p.m., three days a week (typically 79.5 hours per week). Exhibit A ¶ 51; Exhibit D ¶ 13.

15.     From approximately May 2020 until on or about May 2021, Plaintiff Diaz worked one week a month from approximately 11:00 a.m. until on or about 11:00 p.m. three days a week and from approximately 11:00 a.m. until on or about 11:30 p.m., three days a week (typically 73.5 hours per week). (typically, 28 hours per week)). Exhibit A ¶ 52; Exhibit D ¶ 13.

16.     Throughout his employment, Plaintiff Diaz was paid his wages by cash. Exhibit A ¶ 53; Exhibit D ¶14.

17.     From approximately May 2020 until on or about August 2020, Defendants paid Plaintiff Diaz a fixed salary of $80 per day for double shifts and $20 per day for single shifts. Exhibit A ¶ 54; Exhibit D ¶ 16.

18.     From approximately August 2020 until on or about May 2021, Defendants paid Plaintiff Diaz a fixed salary of $60 per day for double shifts and $20 per day for single shifts. Exhibit A ¶ 55; Exhibit D ¶ 17.

19.     Plaintiff Diaz's pay did not vary even when he was required to stay later or work a longer day than his usual schedule. Exhibit A ¶ 56.

20.     For example, Defendants required Plaintiff Diaz to work an additional 30 minutes past his scheduled departure time three days a week, and did not pay him for the additional time he worked. Exhibit A ¶ 57.

21.     Although from approximately May 2020 until on or about August 2020, Defendants allegedly granted Plaintiff Diaz one hour for meal periods, they interrupted these breaks every day by requiring him to stop eating and go make deliveries. Exhibit A ¶ 58.

22.     Plaintiff Diaz was never notified by Defendants that his tips were being included as an offset for wages. Exhibit A ¶ 59.

23.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Diaz's wages. Exhibit A ¶ 60.

24.     Defendants withheld a portion of Plaintiff Diaz's tips; specifically, Defendants withheld 10% of credit card tips and tips paid through Seamless. Exhibit A ¶ 61; Exhibit D ¶ 18.

25.     Plaintiff Diaz was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked. Exhibit A ¶ 62.

26.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Diaz regarding overtime and wages under the FLSA and NYLL. Exhibit A ¶ 63; Exhibit D ¶ 19-20.

27.    Defendants did not give any notice to Plaintiff Diaz, in English and in Spanish (Plaintiff Diaz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1). Exhibit A ¶ 64; Exhibit D ¶ 20.

28.    Defendants required Plaintiff Diaz to purchase "tools of the trade" with his own funds—including bike repair and maintenance. Exhibit A ¶ 65.

**B.    Plaintiff Bernabe Rueda Garcia**

29.    Plaintiff Rueda was employed by Defendants ostensibly as a delivery worker from approximately May 2021, until on or about July 2021.  Exhibit A ¶¶ 66-67; Exhibit E ¶¶ 8.

30.    Plaintiffs Sanchez's work did not require discretion or independent judgment. Exhibit A ¶ 71; Exhibit E ¶ 12.

31.    Although Plaintiff Rueda ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants. Exhibit A ¶ 69; Exhibit E ¶ 9.

32.    Throughout his employment with Defendants, Plaintiff Rueda regularly worked in excess of 40 hours per week. Exhibit A ¶ 72; Exhibit E ¶ 13-14

33.    From approximately May 2021 until on or about July 2021, Plaintiff Rueda worked three weeks each month from approximately 11:00 a.m. until on or about 11:00 p.m., or from approximately 9:00 a.m. until on or about 9:00 p.m. three days a week and from approximately 11:00 a.m. until on or about 11:20 p.m., or from approximately 9:00 a.m. until on or about 9:20 p.m. three days a week (typically 73 hours per week). Exhibit A ¶ 73; Exhibit E ¶ 13.

34.     From approximately May 2021 until on or about July 2021, Plaintiff Rueda worked one week each month from approximately 11:00 a.m. until on or about 11:00 p.m., or from approximately 9:00 a.m. until on or about 9:00 p.m. four days a week and from approximately 11:00 a.m. until on or about 11:20 p.m., or from approximately 9:00 a.m. until on or about 9:20 p.m. three days a week (typically 85 hours per week). Exhibit A ¶ 74; Exhibit E ¶ 14.

35.     Throughout his employment, Defendants paid Plaintiff Rueda his wages in cash. Exhibit A ¶ 75; Exhibit E ¶ 15.

36.     From approximately May 2021 until on or about July 2021, Defendants paid Plaintiff Rueda a fixed salary of $80 per shift. Exhibit A ¶ 76; Exhibit E ¶ 16.

37.     Defendants did not pay Plaintiff Rueda any wages for his last week of work. Exhibit A ¶ 77; Exhibit D ¶ 17

38.     Plaintiff Rueda's pay did not vary even when he was required to stay later or work a longer day than his usual schedule. Exhibit A ¶ 78.

39.     For example, Defendants required Plaintiff Rueda to work an additional 20 minutes past his scheduled departure time three days a week, and did not pay him for the additional time he worked. Exhibit A ¶ 79.

40.     Although Defendants allegedly granted Plaintiff Rueda two hours for meal periods, he never was able to take these breaks because Defendants required him to perform deliveries during these breaks. Exhibit A ¶80.

41.     Plaintiff Rueda was never notified by Defendants that his tips were being included as an offset for wages. Exhibit A ¶ 81.

42.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rueda's wages. Exhibit A ¶ 82.

43.     Defendants withheld a portion of Plaintiff Rueda's tips; specifically, Defendants withheld 10% of credit card tips and tips paid through Seamless. Exhibit A ¶ 83.

44.     In order to release his weekly pay, Defendants required Plaintiff Rueda to sign a document, the contents of which he could not review at all because it was written in English. Exhibit A ¶ 84.

45.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rueda regarding overtime and wages under the FLSA and NYLL. Exhibit A ¶ 85.

46.     Defendants did not provide Plaintiff Rueda an accurate statement of wages, as required by NYLL 195(3). Exhibit A ¶ 86; Exhibit E ¶ 18.

47.     Defendants did not give any notice to Plaintiff Rueda, in English and in Spanish (Plaintiff Rueda's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1). Exhibit A ¶ 87; Exhibit E ¶ 19.

48.     Defendants required Plaintiff Rueda to purchase "tools of the trade" with his own funds—including a motorcycle, a delivery book bag and a raincoat. Exhibit A ¶ 88.

   **C.     Plaintiff Miguel Garcia**

49.     Plaintiff Garcia was employed by Defendants from approximately December 2020 until on or about July 15, 2021. Exhibit A ¶ 89; Exhibit F ¶ 8

50.     Defendants ostensibly employed Plaintiff Garcia as a delivery worker. Exhibit A ¶ 90; Exhibit F ¶ 9.

51.     However, Plaintiff Garcia was also required to spend a significant portion of his work day performing the non-tipped duties described above. Exhibit A ¶ 91; Exhibit F ¶ 9.

52.     Although Plaintiff Garcia ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants. Exhibit A ¶ 92; Exhibit F ¶ 9.

53.     Plaintiff Garcia's work duties required neither discretion nor independent judgment. Exhibit A ¶ 94; Exhibit F ¶ 12.

54.     Throughout his employment with Defendants, Plaintiff Garcia regularly worked in excess of 40 hours per week. Exhibit A ¶ 95; Exhibit F ¶ 13.

55.     From approximately December 2020 until on or about July 15, 2021, Plaintiff Garcia worked from approximately 9:00 a.m. until on or about 9:00 p.m., or from approximately 10:30 a.m. until on or about 10:30 p.m. six days a week and from approximately 5:00 p.m. until on or about 11:00 p.m., one day certain weeks (typically 72 to 78 hours per week). Exhibit A ¶ 96; Exhibit F ¶ 13.

56.     Throughout his employment, Defendants paid Plaintiff Garcia his wages in cash. Exhibit A ¶ 97; Exhibit F ¶ 14.

57.     From approximately December 2020 until on or about April 2021, Defendants paid Plaintiff Garcia a fixed salary of $60 per shift. Exhibit A ¶ 98; Exhibit F ¶ 15.

58.     From approximately May 2021 until on or about July 15, 2021, Defendants paid Plaintiff Garcia a fixed salary of $80 per shift. Exhibit A ¶ 99; Exhibit F ¶ 16.

59.     Although from approximately December 2020 until on or about May 2021, Defendants allegedly granted Plaintiff Garcia 30-minute meal periods, they interrupted these breaks every day by requiring him to stop eating and go make deliveries. Exhibit A ¶ 100.

60. Similarly, although Defendants allegedly granted Plaintiff Garcia a two-hour meal period, he never was able to take this break because Defendants required him to perform deliveries during the break. Exhibit A ¶ 101.

61. Plaintiff Garcia was never notified by Defendants that his tips were being included as an offset for wages. Exhibit A ¶ 102; Exhibit F ¶ 17.

62. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Garcia's wages. Exhibit A ¶ 103; Exhibit F ¶ 19.

63. Defendants withheld a portion of Plaintiff Garcia's tips; specifically, Defendants withheld 10% of credit card tips and tips paid through Seamless. Exhibit A ¶ 104; Exhibit F ¶ 18.

64. In order to release his weekly pay, Defendants required Plaintiff Garcia to sign a document, the contents of which he could not review at all because it was written in English. Exhibit A ¶ 105..

65. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL. Exhibit A ¶ 106.

66. Defendants did not give any notice to Plaintiff Garcia, in English and in Spanish (Plaintiff Garcia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1). Exhibit A ¶ 107; Exhibit F ¶ 20.

67. Defendants required Plaintiff Garcia to purchase "tools of the trade" with his own funds—including a Vespa motorcycle, a helmet and a backpack for deliveries. Exhibit A ¶ 108.

## IV. WHY A DEFAULT JUDGMENT IS APPROPRIATE, INCLUDING DESCRIPTION OF METHOD AND DATE OF SERVICE OF ORIGINAL COMPLAINT

68. It is well settled that defendants who fail to file an answer or otherwise move in respect to a complaint filed, are deemed to have admitted all of the well-pleaded allegations in

the complaint pertaining to liability. <u>D.H. Blair & Co., Inc. v. Gottdiener</u>, 462 F.3d 95, 107 (2d Cir. 2006) ("Rule 55 tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party") (internal citation omitted). In this case, Defendants failed to file an answer or otherwise respond to the Complaint, and the time to do so has expired. Thus, Plaintiffs' allegations are unchallenged, and consequently they are entitled to default judgment.

69.     Plaintiffs properly served the Defendants FIRST DRUNKEN CHICKEN CORP. (D/B/A LIM'S KITCHEN (BAR & POCHA) on October 4, 2021 pursuant to Fed. R. Civ. P. 4(h) (1)(B), N.Y. C.P.L.R § 311-a(a), and Section 303 of the New York Limited Liability Company Law, by personally serving Nancy Dougherty, an authorized agent in the Office of the Secretary of State of New York. Copies of the Summons and Complaint were served on WOOBI INC. (D/B/A LIM'S KITCHEN (BAR & POCHA)on October 4, 2021 pursuant to Fed. R. Civ. P. 4(h) (1)(B), N.Y. C.P.L.R § 311-a(a), and Section 303 of the New York Limited Liability Company Law, by personally serving Nancy Dougherty, an authorized agent in the Office of the Secretary of State of New York. Copies of the Complaint were served on BOKYOUNG LIM and DONGMIN PARK on October 7, 2021, pursuant to Fed. R. Civ. P. 4(e) (1) and New York C.P.L.R. § 308(2), by delivering the Summons and Complaint to Blair "Doe", a person of suitable age and discretion, identified as "manager", at the Defendant's place of business within the state, and mailing copies of each to Defendants on BOKYOUNG LIM and DONGMIN PARK, in accordance with the requirements of New York CPLR § 308(2). Proof of such service as to Defendants thereof was filed on December 14, 2021. Dkt. Nos. 8-11. Exhibit B (all affidavits of service of the Complaint).

70. The Defendants failed to answer the Complaint, or otherwise appear. On January 27, 2022, the Clerk of the Court issued certificates of default as to FIRST DRUNKEN CHICKEN CORP. (D/B/A LIM'S KITCHEN (BAR & POCHA)), WOOBI INC. (D/B/A LIM'S KITCHEN (BAR & POCHA)), BOKYOUNG LIM, and DONGMIN PARK. Dkt. No. 13. Exhibit C.

## V. <u>LEGAL AUTHORITY WHY AN INQUEST IS UNNECESSARY</u>

71. Plaintiffs maintain that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages.

72. Upon entry of a default, the court may award damages based upon evidence submitted through affidavits and exhibits, or by an evidentiary hearing. <u>Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc</u>., 699 F.3d 230, 234 (2d Cir. 2012). "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." <u>Id</u>. "Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'" <u>Id</u>. (quoting <u>Tamarin v. Adam Caterers, Inc</u>., 13 F.3d 51, 54 (2d Cir. 1993)).

73. For the case at bar, "there is no need for an inquest here." <u>Olvera v Los Taquitos Del Tio Inc</u>., 2015 US Dist LEXIS 75880, at *3 (EDNY June 11, 2015). "Plaintiff's affidavit constitutes adequate proof of his damages." <u>Id</u>. "There is no point in having him appear to repeat his hours and conditions of work as set forth in [the plaintiff's] affidavit. Plaintiff has accurately computed the … damages." <u>Id</u>.

74. Based on the evidence Plaintiffs have put forward, damages, including back pay, liquidated damages, should be awarded in the amount of $250,238.40, plus prejudgment interest and attorneys' fees and costs. <u>See e.g</u>. <u>Herrara v 12 Water St. Gourmet Café</u>, 2016 US Dist

LEXIS 25565, at \*12 [SDNY Feb. 29, 2016, No. 13-CV-4370 (JMF)(RLE)] ("While a court usually conducts an inquest hearing to determine damages, a hearing is not necessary where extensive documentary evidence is available").

## VI.     PROPOSED DAMAGES AND BASIS FOR EACH ELEMENT OF DAMAGES INCLUDING INTERST, ATTORNEY'S FEES, AND COSTS.

### A.  Unpaid Minimum and Overtime Wages

75.     When an employee is subject to both the federal and state wage laws, the employee is entitled to the provisions of each law which provide the greater benefits.  See e.g. Davis v 2192 Niagara St., LLC, 2016 US Dist LEXIS 98351, at \*31, n 10 [WDNY July 26, 2016, No. 15-CV-00429A[F]]; see also e.g. Copantitla v Fiskardo Estiatorio, Inc., 788 F Supp 2d 253, 290 [SDNY 2011].

76.     LIM'S KITCHEN falls within the ambit of the New York Hospitality Industry Wage Order. 12 NYCRR 146 et seq. "Restaurant" is defined as "any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as (…) counter service to the public, to employees, or to members or guests of members, and services in connection therewith or incidental thereto." 12 NYCRR 146-3.1. Throughout Plaintiffs' employment,) FIRST DRUNKEN CHICKEN CORP. (D/B/A LIM'S KITCHEN (BAR &POCHA)), WOOBI INC. (D/B/A LIM'S KITCHEN (BAR & POCHA)), BOKYOUNG LIM, and DONGMIN PARK, prepared and offered food for its customers via counter and table service. Accordingly, for the purposes of the wage law, the Defendant's business was a "restaurant."

77.     Under the New York Hospitality Industry Wage Order and the federal Fair Labor Standards Act, "an employer shall pay an employee for overtime at a wage rate of 1 1/2 times the

employee's regular rate for hours worked in excess of 40 hours in one workweek." 12 NYCRR § 146-1.4; see also 29 U.S.C. § 207[a] [1].

78.     In this case, the Defendants paid Plaintiffs a fixed salary, which does not include overtime pay. "If an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 NYCRR § 146-3.5.  Accordingly, Defendants fixed weekly salaries did not include any payments for overtime.  12 NYCRR § 146-3.5.

79.     At all times relevant to the FLSA claims in this action, the minimum wage rate under the FLSA was $7.25 per hour. Employees must be paid one-and-one half times their regular rate for each hour worked over forty (40) hours worked in a week. 29 U.S.C. § 207(a)(1). The New York Minimum wage rate is $15.00 per hour as of December 31, 2018. 12 N.Y.C.R.R. 146-1.2. New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week.  12 N.Y.C.R.R. 146-1.4. The regular rate is the rate an employee is regularly paid for each work hour. 12 N.Y.C.R.R. § 146-3.5.

80.     The onus is on an employer to maintain records of employees' hours worked and wages paid.  29 U.S.C. §211(c); 12 NYCRR 146-2.1. "In a FLSA case, in the absence of rebuttal by [D]efendants, [P]laintiffs' recollection and estimates of hours worked are presumed to be correct." Zeng Liu v. Jen Chu Fashion Corp, 2004 U.S. Dist. LEXIS 35, *8 [S.D.N.Y. 2004]. As Defendants are in default and therefore produced no records, Plaintiffs rely on their declaration to substantiate the hours they worked and pay they received.

81.     Plaintiff Angel Diaz is owed $55,185.00 in unpaid minimum and overtime wages as set forth in the damages' calculation annexed hereto as Exhibit G (damages chart).

82.     Plaintiff Bernabe Rueda Garcia is owed $9,810.00 in unpaid minimum and overtime wages, as set forth in the damages' calculation annexed hereto as Exhibit G (damages chart).

83.     Plaintiff Miguel Garcia is owed $25,550.00 in unpaid minimum and overtime wages, as set forth in the damages calculation annexed hereto as Exhibit G (damages chart).

**B.  Improper Wage Deductions**

84.     "Employers may not make any deductions from wages, except for credits authorized in this Part and deductions authorized or required by law, such as for social security and income taxes… If an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage." 12 NYCRR § 146-2.7.

**C.  Violations of Wage Notice and Statement Requirements**

85.     Defendants did not provide Plaintiffs with a wage notice at the start of their employment or annually, or with an accurate and lawful wage statement with each payment of wages as required by NYLL §§ 195(1) and 195(3).

86.     Plaintiffs are therefore entitled to statutory damages in the maximum amount of $5,000 under each section, for a total of $30,000.  NYLL §§ 195 and 198.  Exhibits D, E and F.

**D.  Liquidated Damages**

87.     The FLSA and NYLL provides for a liquidated damages award "'unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'"  McLean v. Garage Management Corp., 2012 U.S. Dist. LEXIS 55425 at *21 (S.D.N.Y. April 19, 2012) (quoting NYLL §198(1-a)); See 29 U.S.C. § 216[b] ("Any employer

who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages"); Jiaren Wei v Lingtou Zhengs Corp., 2014 US Dist LEXIS 182325, at *1 [EDNY Dec. 3, 2014, No. 13 CV 5164 [FB]]] (quoting N.Y. Lab. Law § 663[1]).[1]

88.     Given the uncontroverted evidence, Defendants cannot meet their burden to establish good faith.  Accordingly, Plaintiffs are entitled to liquidated damages, computed at 100% of the unpaid minimum and overtime wages as set forth in the damages calculation annexed hereto as Exhibit F.  Such liquidated damages amount to $90,545.00 for the three Plaintiffs.

E.  **Statute of Limitations**

89.     Plaintiffs are entitled to a three-year limitations period under the FLSA and a six-year limitations period under the NYLL. A willful violation triggers a three-year statute of limitations for FLSA claims and a six-year statute of limitations for Plaintiffs' NYLL claims. 29 U.S.C. § 255(a); N.Y. Lab. Law §§ 198(3), 663(3).  A violation is "willful" if the employer either knew or showed "reckless disregard as to whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 286 U.S. 128, 133 (1988). Willfulness is also established when an employer fails to investigate whether its compensation policy was legal. See Hardrick v. Airway Freights Systems, Inc., 63 F. Supp. 2d 898, 904 [N.D.Ill. 1999]; Alvarez v. IBP, Inc., 339 F.3d 894, 909 [9th Cir. 2003], aff'd, 126 S.Ct. 514 [2005] (upholding the three-

---

1 The employer can make this award discretionary by a showing of good faith. 29 U.S.C. § 260.  Since Defendants are in default, they cannot meet this burden.

year statute of limitations because employer was on notice of FLSA requirements but "took no affirmative action to assure compliance" with them).[2]

### F. **Attorneys' Fees and Costs**

90.     The FLSA and NYLL both contain fee-shifting provisions for actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the Plaintiffs or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court"); see, e.g., Guardado v. Precision Fin., Inc., No. 04 Civ. 3309, 2008 U.S. Dist. LEXIS 47881, at *2 [E.D.N.Y. Mar. 25, 2008].

91.     Plaintiffs incurred costs and attorneys' fees in pursuing this action and seeks an award of reasonable attorneys' fees and costs. The attorneys' fees total $3,550.00 and the costs total $664.00, including a filing fee of $402.00 and other costs associated with serving the Defendants with the Summons and Complaint. Exhibit H.

92.     "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 [2d Cir. 2008]. Prior to Arbor Hill, this amount was known as the "lodestar" amount, which the Second Circuit has suggested be known going forward as the "presumptively reasonable fee." Id. at 183.

---

[2] For the sake of completeness, it may be noted that the Defendants are in default and therefore cannot oppose the finding of willfulness. Defendants should have been aware of the existence of the FLSA and its overtime requirements. Furthermore, even if the Defendants did not know of the FLSA, the Defendants' actions are still willful because there is no evidence that Defendants investigated whether their compensation policy was legal. See Hardrick, 63 F. Supp. 2d at 904; Decraene v. Neuhaus (U.S.A.), Inc., 2005 U.S. Dist. LEXIS 10836 at *23-*24 [S.D.N.Y. 2005]; Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 340 [S.D.N.Y. 2005] ("A failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages") (internal quotations omitted).

It is "well established that 'any attorney ... who applied for court-ordered compensation in this Circuit ... must document the application with contemporaneous time records ... specifying, for each attorney, the date, the hours expended, and the nature of the work done.'" <u>Cesario v BNI Constr., Inc.</u>, 2008 US Dist LEXIS 103155, at *19 [SDNY Dec. 15, 2008] (<u>quoting</u> <u>N.Y. State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 [2d Cir. 1983]). While reviewing the records, the Court should make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 [2d Cir.1994]. The inquiry should be focused on "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." <u>Grant v. Martinez</u>, 973 F.2d 96, 99 [2d Cir. 1992] (citation omitted). However, in considering the records, the Court should not "engage in 'an ex post facto determination of whether attorney hours were necessary to the relief obtained.'" <u>Cesario</u>, 2008 U.S. Dist. LEXIS 103155, at *20 (<u>quoting</u> <u>Grant</u>, 973 F.2d at 99]). While the Court may exclude hours from the calculation that are "excessive, redundant, or otherwise unnecessary," <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 [1983], "[t]here is no precise rule or formula for making these determinations," <u>Id</u>. at 436. Plaintiff's attorney has submitted a compilation of contemporaneous time records for the Court's consideration on this motion. Exhibit H (Plaintiffs' counsel's contemporaneous time and cost records).

93.     The Court should find that all attorney hours spent on this case were reasonable under the circumstances and include every hour expended in its calculation of the presumptively reasonable fee. With respect to figuring a reasonable hourly rate, the Second Circuit has held that the term means "what a reasonable, paying client would be willing to pay." <u>Arbor Hill</u>, 522

F.3dat 184. The rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Reiter v. MTA N.Y. City Transit Auth., 457 F.3d 224, 232 [2d Cir. 2006] [citation omitted]. In considering the appropriate rate, the Court may also use its own knowledge of the relevant market. See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96-97 [2d Cir. 2006].

94.     A breakdown of attorneys' fees and costs incurred in filing the Complaint and seeking default, in the form of this firm's standard billing sheet is attached hereto as Exhibit H.

95.     The attorneys who worked on the case are as follows:

Michael Faillace, Esq. ("MF"), was the Managing Member of Michael Faillace & Associates, P.C., which is now CSM Legal, and was in practice from 1983 to November 5, 2021. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). He taught employment antidiscrimination law as an Adjunct Professor at Fordham University School of Law beginning in 1992 and at Seton Hall University Law School from 1995 to 1998, and he is a nationally-renowned speaker and writer on employment law. He is also the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations. His work was billed at the rate of $450 per hour, his standard billing rate for matters paid on an hourly basis. Courts have routinely held that hourly fees of $450, or even $500, for counsel with Mr. Faillace's level of experience (37 years) and expertise are reasonable. See, e.g., Manley v. Midan Rest. Inc., No. 1:14-cv-1369 (S.D.N.Y. March 27, 2017), Doc. No. 42 at *32, 35-37 (fees of $500 per hour for FLSA litigator with 34 years of experience).

Catalina Sojo ("CS"), is the Managing Member of CSM Legal, P.C., formerly Michael Faillace & Associates. I graduated with a J.D. equivalent degree from Pontificia Universidad Javeriana in Bogota, Colombia, in 2017. I received a Master of Laws degree (LL.M.) from Cornell University School of Law in 2019. Prior to joining Michael Faillace & Associates in June 2020, I focused my practice in intellectual property litigation and enforcement, having worked as an associate at Baker McKenzie and as in-house counsel at Viacom CBS. My work is billed at a rate of $350 per hour.

Bryan D. Robinson is an associate at CSM Legal, P.C., formerly known as Michael Faillace & Associates. Attorney Bryan D. Robinson developed a background in

representing plaintiffs in civil litigation cases and also defendants in criminal cases at the Gracia Law Firm in Brownsville, Texas. Subsequently, attorney Bryan D. Robinson vigorously advocated for his clients in matters pertaining to Family Law at The King Law Firm in New York City. He has managed a case load of over 90 actions from intake to verdict. He graduated from Maurice A. Deane School of Law at Hofstra University in 2018, where he represented immigrants against the threat of deportation through a student practice order as member of the Hofstra Law Deportation Defense Clinic. Mr. Robinson also attended Escuela Libre de Derecho in Mexico City, Mexico, where he obtained a diploma in Corporate Law. His ability to speak and write in the Spanish language has facilitated interaction with plaintiffs who only speak Spanish. Furthermore, this ability coupled with Mr. Robinson's legal background has granted him the opportunity to serve as an advisor to politicians both in Mexico, and in the United States. He is licensed to practice law in the Southern and Eastern District of New York, the Southern District of Texas, and in New York and Texas State Courts. He is requesting an hourly rate of $300.00. Mr. Robinson's billing entries are denoted by "BR."

Paralegals at CSM Legal, P.C. bill at a rate of $125 per hour, well within a range of rates for paralegal work that courts have routinely approved. See, e.g., Cortes v. New Creators, Inc., 2016 U.S. Dist. LEXIS 79757, *19-20 (S.D.N.Y. June 20, 2016); see also Guallpa v. NY Pro Signs Inc., 2014 U.S. Dist. LEXIS 77033, *29 (S.D.N.Y. May 27, 2014).

### G. Additional Damages

96.     Plaintiffs also request that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

### VII.     CONCLUSION

97.     Based on the above information and exhibits, Plaintiffs assert the record supports a judgment against the Defendants in favor of Plaintiffs in the total amount of $250,238.40 not including prejudgment interest.

98.     Prejudgment interest continues to run and should ultimately be computed through the date judgment is entered.

99.     Additionally, Plaintiff entitled to $3,550.00 in attorneys' fees and costs in the amount of $664.00.

100.     As shown herein, no inquest is necessary when, as in the present case, the Court has before it the proper measure of damages and evidence submitted by Plaintiffs that allows damages to be calculated with reasonable certainty. The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself. Sufficient definitive information and documentation is provided such that the amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by Plaintiffs' declarations accompanying these motion papers.

101.     No part of the judgment sought has been paid.

102.     Plaintiffs also request that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198[4].

103.     For the reasons stated above and in the accompanying declarations and exhibits, Plaintiffs' motion for a default judgment should be granted.

**WHEREFORE**, Plaintiffs request the entry of Default and the entry of Judgment against Defendants FIRST DRUNKEN CHICKEN CORP. (D/B/A LIM'S KITCHEN (BAR &POCHA)), WOOBI INC. (D/B/A LIM'S KITCHEN (BAR & POCHA)), BOKYOUNG LIM, and DONGMIN PARK.


Dated: New York, New York
       March 9, 2022

CSM LEGAL, P.C.

/s/ Catalina Sojo
Catalina Sojo, Esq.
CSM LEGAL, P.C.
One Grand Central Place
60 East 42nd Street, Suite 4510
New York, New York 10165
Tel: (212) 317-1200
Fax: (212) 317-1620
Email: Catalina@csm-legal.com
*Attorneys for Plaintiffs*